```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA
                      Richmond Division
```

UNITED STATES OF AMERICA,
*ex rel.* ROGER CHARLES DAY, JR.,

    Plaintiff,

v.                                     Civil Action No. 3:23cv371

BOEING, <u>et al.</u>,

    Defendants.


**MEMORANDUM OPINION**

This matter is before the Court on RELATOR'S RENEWED MOTION FOR RELIEF FROM ORDER OF DISMISSAL PURSUANT TO FED. R. CIV. P. 60(b) ("RENEWED MOTION") (ECF No. 21), the supporting and opposing memoranda (ECF Nos. 22 and 23). The Relator has not filed a reply brief. For the reasons set forth below, the RELATOR'S RENEWED MOTION FOR RELIEF FROM ORDER OF DISMISSAL PURSUANT TO FED. R. CIV. P. 60(b) (ECF No. 21) will be granted.

**BACKGROUND**

1. **THE COMPLAINT**

Roger Charles Day, Jr. ("Day" or the "Relator") filed this *qui tam* action alleging violations of the False Claims Act, 31 U.S.C. § 3730(c)(2)(A) by the Defendants, all of which are makers and sellers of replacement parts for equipment and vehicles that

the Defendants have previously sold to the United States. (ECF No. 1, ¶¶ 1 and 2). The COMPLAINT also alleges that the Government, itself, is knowingly complicit in the false claims that are alleged being submitted by the Defendants.

According to the COMPLAINT, the Defendants sell their "proprietarily-manufactured, specific replacement parts for equipment and vehicles previously delivered to the United States via sole source bidding." (ECF No. 1, ¶ 2). The COMPLAINT also alleges that the Defense Logistics Agency ("DLA") (using the Defense Internet Bid Board System ("DIBBS")), and the Defendants are intentionally circumventing the regulatorily required sole source bidding process for the products at issue. (ECF No. 1, ¶¶ 3, 6 and 7). In particular, the DLA and the Defendants are allegedly using what they call a competitive bidding process by which "[t]he Defendants and DLA contracting officers falsely claim that these contracts for replacement parts purchases are competitive, thereby allowing the Defendants to bypass the Sole Source regulatory requirement" and its limits on the maximum profit allowed for Sole Source procurements. (ECF No. 1, ¶ 15). As part of that contrived process, the Defendants are able to receive higher profit margins (margins that are oftentimes hundreds and thousands of percentages higher) than would be permitted under the sole source procurement regulatory structure. (ECF No. 16).

The COMPLAINT then particularizes that:

2

> DLA contracting officers, working with the Defendants, and knowing these parts are actually Sole Source procurements, are acting in violation of law and regulation when they award these Sole Source contracts as competitively bid contracts and allow the Defendants to charge effectively whatever they desire as "justifiable" because, once bid competitively, the best bid is the only bid that is acceptable and the single bid is deemed sufficient as it represents "best value" as defined in the competitive FARS.

(ECF No. 1, ¶ 17). Because of the alleged fraudulent and conspiratorial conduct between the Defendants and the DLA contracting officers (using the DIBBS), "all contracts awarded to these defendants . . . for replacement parts is [sic] a false claim." (ECF No. 1, ¶ 21).

## 2. THE RESPONSE OF THE UNITED STATES

### A. The Pleadings Filed By the United States

The United States filed a NOTICE OF ELECTION TO INTERVENE FOR PURPOSES OF DISMISSING THE COMPLAINT AND REQUEST TO UNSEAL (the "NOTICE") pursuant to 31 U.S.C. § 3730(c)(2)(A) (hereafter "§ 2(A)"). (ECF No. 11). At the same time, the United States also filed UNITED STATES' MOTION TO DISMISS THE COMPLAINT (ECF No. 9) and a MEMORANDUM OF LAW IN SUPPORT OF UNITED STATES' MOTION TO DISMISS RELATOR'S COMPLAINT (ECF No. 10) (the "Motion to Dismiss").

The Motion to Dismiss is based entirely on the premise that the COMPLAINT merely takes issue with the acquisition method employed by the DLA, and that, therefore, the COMPLAINT "does not

3

allege that any defendant has made any false claim to the DLA nor made any false statement in support of a false claim." And so, says the United States, the COMPLAINT "has not asserted actionable FCA claims against the defendants."

The Motion to Dismiss also advises that the Defendants have not filed an answer, responsive pleading, or a motion for summary judgment. That is correct, but, of course, the Defendants have not been served with the COMPLAINT because it was filed under seal. Thus, the Defendants neither knew of the charges in the COMPLAINT nor were under any obligation to answer or otherwise respond to it, or to file a motion for summary judgment.

In the opening section of its brief supporting the Motion to Dismiss, the United States asserts that it "has investigated Relator's allegations and finds them to be without merit. The Relator has informed the Government that he intends to proceed with the *qui tam* Complaint if the Government does not intervene." (ECF No. 10, p. 4).

Then, in Section II of its brief supporting the Motion to Dismiss,[1] the United States advised that it was "concurrently filing a Notice of Election to Intervene for the Purpose of Dismissal." (ECF No. 10, p. 6). In that brief supporting the Motion to Dismiss, the United States tersely asserted that it "has

---

[1] Section II is captioned "THE UNITED STATES IS ENTITLED TO DISMISS RELATOR'S QUITAM ACTION."

4

determined that dismissal is commensurate with the public interest and that the matter does not warrant the continued expenditure of government resources to pursue monitor the action. Relator has not alleged a fraud by the defendants upon the Government." (ECF No. 10, p. 6).

The NOTICE (ECF No. 11) does not explain why the United States thinks that dismissal is appropriate. And, like the brief supporting the motion seeking dismissal, the NOTICE does not explain why dismissal is commensurate with the public interest.

As authority for dismissal, the United States relies principally on the decision in United States ex rel. Polansky v. Executive Health Resources, Inc., 143 U.S. S. Ct. 1720 (2023). It also invokes the provisions of Fed. R. Civ. P. 41(a)(1).

B.  The Sequence of Events

The United States filed the NOTICE and Motion to Dismiss and supporting memorandum on November 1, 2023. On November 28, 2024, the United States filed NOTICE TO SUBMIT FOR DECISION WITHOUT A HEARING (ECF No. 13). Therein, the Court was informed that the Motion to Dismiss was served on Relator's counsel on November 1, 2023 and that Relator had not responded. The Motion to Dismiss was granted by ORDER entered on November 30, 2023 (ECF No. 14).

On December 7, 2023, Day filed the RELATOR'S MOTION FOR RELIEF FROM ORDER OF DISMISSAL PURSUANT TO FED. R. CIV. P. 60(b) (ECF No. 16). Therein, he requested a hearing to present his objections

5

to the Motion to Dismiss. Day also submitted a supporting Memorandum of Law (ECF No. 17). Day argued that the requirements of § 2(A) that require a hearing before dismissal had not been followed. Further, he argued that a dismissal, if ordered, must be without prejudice because that is the norm under Fed. R. Civ. P. 41(a).

As an explanation for failing to file a response to the Motion to Dismiss, Day argued that, because he was in prison and being transferred from institution to institution, he was not in a position to consult with his counsel.[2] Day did not discuss the decision in Polansky or the relationship between § 2(A) and Rule 41(a).

By ORDER entered on January 23, 2024, the RELATOR'S MOTION FOR RELIEF FROM ORDER OF DISMISSAL PURSUANT TO FED. R. CIV. P. 60(b) (ECF No. 16) was denied without prejudice for failure to show a meritorious defense. However, Day was granted leave to file a RENEWED MOTION to vacate (ECF No. 20) by February 21, 2024.

On that date, Day filed the RENEWED MOTION (ECF No. 21) that is fully briefed and ripe for decision.

## DISCUSSION

In many respects, the RENEWED MOTION is much like the first one. However, the RENEWED MOTION does purport to proffer evidence

---

[2] Day made other arguments which need not here be addressed.

6

of a meritorious claim and by asking for a § 2(A) hearing to present that evidence. (ECF No. 22, pp. 3-5). And, Day argues that a § 2(A) hearing is required. (ECF No. 22, pp. 6-7).

The RENEWED MOTION is founded on Fed. R. Civ. P. 60(b)(1) and (5). (ECF No. 22, p. 3). To each, we now turn.

**A.   RULE 60(b)   REP: SHOULD THIS BE HEADING "3"**

Rule 60(b) provides that: "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

or

(6) any other reason that justifies relief.

**(1)   Rule 60(b)(1)**

Day's argument for relief under Rule 60(b)(1) is that, because he was incarcerated and was in the process of being relocated in the prison system at the time his counsel received the Motion to Dismiss and the Notice, he:

> was not in a position to communicate effectively or in a timely manner with counsel and he was not able to review his previously-possessed legal documents or engage in material discussions concerning objections or other litigation strategies.

(ECF No. 22, p. 8). And, says Day:

> [a]s a result, his failure to file a response

7

> in opposition was inadvertent, it was caused
> by transfers which were a surprise, and the
> inability for [sic] counsel to speak with his
> client effectively serves as a justifiable
> basis for 'excusable neglect.'

(ECF No. 22, p. 8).

The response of the United States does not address that argument. (ECF No. 23). But, in the UNITED STATES' RESONSE [sic] TO RELATOR'S MOTION FOR RELIEF FROM ORDER OF DISMISSAL (ECF No. 18), the United States did argue that Day's showing does not "constitute a 'mistake, inadvertence, surprise, or excusable neglect within the meaning of 60(b)." (ECF No. 18, pp. 11-12). That conclusory response is not supported by any citation. Moreover, the response is just wrong.

Where, as here, a client has no control over his schedule because he is incarcerated and, as a result, is not able to communicate with his counsel and, for that reason, a responsive pleading is not filed, the standard for excusable neglect is satisfied.

It would have been preferable for counsel to have filed a motion seeking an extension of time in which to respond. However, under the facts surrounding the communication respecting the filing of the Motion to Dismiss and the NOTICE and Day's involuntary relocation while incarcerated, the failure to file a motion for extension of time before the Court ruled was excusable. To hold otherwise would run afoul of Polansky's directive that "a

8

court, in applying Rule 41, 'should endeavor to ensure that substantial justice is accorded to all parties.'" United States, ex rel. Polansky, 143 S. Ct. at 1734.

### (2). Rule 60(b)(6): Any Other Reason That Justifies Relief

Even if Rule 60(b)(1) relief were not available, the RENEWED MOTION must be granted and the dismissal order (ECF No. 14) must be vacated because the Court did not follow, and the United States did not satisfy, the requirements of Polansky.

In Polansky, the Supreme Court held that Fed. R. Civ. P. 41(a) (which governs voluntary dismissals in ordinary civil litigation) provides the standard by which "[a] district court should assess a [§](2)(A) motion to dismiss." 143 S. Ct. at 1733.

In Polansky, the Court held that:

> The application of Rule 41 in the FCA context will differ in two ways from the norm. The first pertains to procedure. The FCA requires notice and an opportunity for hearing before a [§] (2)(A) dismissal can take place. So the district court must use their [the FCA and § 2(A)] procedural framework to apply Rule 41's standards.

United States, ex rel. v. Polansky, 143 S. Ct. at 1734. In a footnote explaining that text, the Supreme Court commented upon the purpose of a § 2(A) hearing when dismissal is sought before an Answer was filed. In so doing, the Court observed that "the district court has no adjudicatory role. So what is the court supposed to do at the hearing the FCA requires?" United States,

9

*ex rel.* v. Polansky, 143 S. Ct. at 1734 n. 4. Then, the Court commented that the district court, at least, should consider allegations that a dismissal would violate the relator's rights to due process or equal protection.

In Polansky, the Supreme Court went on to explain the second way in which the application of Rule 41 in the FCA context will differ from the norm. However, that discussion pertained to a circumstance in which, as mentioned in Rule 41(a)(2), the defendant had filed an Answer or other pleading. That circumstance does not obtain in this case because this not a post-Answer circumstance because the Defendants having never been served with process in the case.

Nonetheless, in Polansky, the Supreme Court explained that "a court, in applying Rule 41, 'should endeavor to ensure that substantial justice is accorded to all parties.'" United States, *ex rel.* v. Polansky, 143 S. Ct. at 1734 (citing 9 C. Wright & A. Miller, Federal Practice of Procedure, § 2364, p. 554 (4th ed. 2022)). And, that includes taking into account the interest of the relator. Id.

After acknowledging that a hearing, at a minimum, could entertain constitutional constraints on government action which violated the relator's rights to due process or equal protection, the Supreme Court, in Polansky, further explained the § 2(A)

10

hearing requirement in context of Rule 41. In particular, the Court explained that:

> This Court has never set out a grand theory of what that Rule requires, and we will not do so here. The inquiry is necessarily 'contextual' of 9 Wright & Miller, § 2364 at 599. And in this context, the Government's views are entitled to substantial deference.
>
> * * *
>
> Given all that [the purpose of a *qui tam* action], a district court should think several times over before denying a motion to dismiss. If the Government offers a reasonable argument for why the burdens of continued litigation outweigh its benefits, the court should grant the motion. And that is so even if the relator presents a credible assessment to the contrary.

United States, *ex rel.* v. Polansky, 143 S. Ct. at 1734 (emphasis added). What is particularly significant for our case is that, in Polansky, the Supreme Court examined the showing made by the Government to ascertain whether, in fact, it had made a reasonable argument for why the burdens of continued litigation outweighed its benefits. In that regard, the Supreme Court observed:

> The Government, in moving to dismiss, enumerated the significant cost of future discovery in the suit, including the possible disclosure of privileged documents. At the same time the Government explained in detail why it had come to believe that the suit had little chance of success on the merits.
>
> * * *
>
> The Government gave good grounds for thinking that this suit would not do what all qui tam

11

> actions are supposed to do: vindicate the Government's interests. Absent some extraordinary circumstance, <u>that sort of showing is all that is needed</u> for the Government to prevail of a [§] (2)(A) motion to dismiss.

(emphasis added). When the Supreme Court's decision in <u>Polansky</u> is measured against the skimpy showing made by the United States here, it is clear that the Court committed a substantial error in granting the Motion to Dismiss by entering the ORDER (ECF No. 14) without a § 2(A) hearing. In contrast to <u>Polansky</u>, the Government here did not enumerate the significant costs of future discovery. Instead, it merely alluded to them and then only in a conclusory fashion. It did not raise a problem of a special nature such as the disclosure of privileged documents. In sum, the record here does not satisfy <u>Polansky</u>'s requirement that the United States must offer "a reasonable argument for why the burdens of continued litigation outweigh its benefits."

Nor did the United States explain in detail (or at all) why it had come to believe that the suit had little chance of success on the merits. Indeed, the Government completely mischaracterized the nature of the Relator's COMPLAINT by arguing that the COMPLAINT did not assert any false claims. To the contrary, the COMPLAINT quite clearly alleges false claims by the Defendants. Worse still, it alleges that the Government procurement agencies were

12

knowingly complicit in the making of the false claims that were alleged.

Applying the rule of Polansky, the Court cannot conclude that "[t]he Government gave good grounds for thinking that this suit was not do what all *qui tam* actions are supposed to do: vindicate the Government's interests." To put it another way, the United States gave no substantively supported grounds for dismissal or for claiming an unwarranted burden. Rather, the United States relied on undocumented conclusory assertions. In accepting those assertions, the Court erred and violated the fundamental principles which are specified by the Supreme Court in Polansky.

In particular, the Court did not accurately and adequately comply with the instructions of the Supreme Court in Polansky as respecting how to properly assess the Motion to Dismiss and did not measure that motion by the standards set in Polansky. That is a fundamental mistake of law that necessitates relief under Rule 60(b)(6).

## CONCLUSION

For the foregoing reasons, the RELATOR'S RENEWED MOTION FOR RELIEF FROM ORDER OF DISMISSAL PURSUANT TO FED. R. CIV. P. 60(b) (ECF No. 21) will be granted, the ORDER (ECF No. 14) will be vacated, and a hearing will be ordered.

The Clerk is directed to send a copy of this Memorandum Opinion to Robert P. McIntosh, Assistant United States Attorney and Elliott Harding, Esquire, counsel for Rogert Charles Day, Jr., Relator.

It is so ORDERED.

/s/ *REP*
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: June 13, 2024