IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ROGER CHARLES DAY, JR., | ) | |
| | ) | Civil No. 3:23-cv-371-REP |
| Plaintiff, | ) | |
| v. | ) | |
| BOEING, *et al.,* | ) | |
| Defendants. | ) | |

UNITED STATES' REPLY TO RELATOR'S RESPONSE TO UNITED STATES' SUPPLEMENT TO SUPPLEMENTAL MEMORANDUM

The United States of America, by counsel and pursuant to the Court's Order (Dkt.No. 52), submits the following Reply to Relator's Response [Dkt.No. 53] to the United States' Supplement to Supplemental Memorandum [Dkt.No. 51].

INTRODUCTION

Pursuant to 31 U.S.C. § 3730(b)(2) and § 3730(c)(2)(A), the United States intervened in this action and filed a motion to dismiss. In response, the Relator requested that the United States be removed as a party from the action. Briefing of the two motions was complete on August 27, 2024. On August 29, 2024, the United States Court of Appeals for the Fourth Circuit issued its opinion in *United States ex rel. Doe v. Credit Suisse AG,* No. 22-1054, ___ F.4th ___, 2024 WL 3974986 (4th Cir. Aug. 29, 2024), and the United States requested leave to supplement its Supplemental Memorandum (Dkt.No. 40) to cite *Credit Suisse*. The Court granted the request with the Relator's consent.

On September 10, 2024, the Court entered an Order stating that "[h]aving reviewed the

[Supplement to the Supplemental Memorandum] . . . and being of the view that the [Relator] . . . asserts that the United States has a conflict of interest that forecloses the granting of the [Motion to Dismiss] . . . and that the asserted conflict may well constitute an 'extraordinary circumstance' within the meaning of [*United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419 (2023)]," the parties are ordered to file additional briefing, including specifically to "address the significance of the [*Credit Suisse*] decision . . . to the issues presented in ["Relator's Motion to Remove the United States of America as a Party" and "United States' Supplement to Supplemental Memorandum"] ECF Nos. 37 and 51 [respectively], and the Complaint." Order, Dkt.No. 52 at 1-2 (emphasis added).

As explained below: (1) the United States does not have a conflict of interest; (2) should the Court determine that the United States, in fact, has a conflict of interest, it does not constitute an "extraordinary circumstance" or an "exceptional case" within the meaning of *Polansky* or *Credit Suisse*; and (3) if the United States were removed as a party and its Motion to Dismiss denied, that *would be* extraordinary, exceptional, and unprecedented – it also would severely impinge on the government's traditional, constitutionally grounded authority to control litigation brought in its name.

For reasons explained more fully below, the Court should grant the United States' Motion to Dismiss and deny the Relator's Motion to Remove the United States as a Party.

ARGUMENT

I.

THE GOVERNMENT HAS NO "CONFLICT OF INTEREST."

The Relator alleges that the Government has "an unwaivable, uncontested, and obvious

conflict of interest." Relator's Memorandum of Law in Response to Supplemental Authority, Dkt.53 at 5. This is not true. Relator's assertion of a conflict of interest rests on nothing more than the Government's invocation of its right under 31 U.S.C. §3730(c)(2)(a) to move to dismiss Relator's bare bones allegations that defendants have perpetrated a fraud against the Defense Logistics Agency. Though not required by *Polansky* or Rule 41 (a)(1)(A), the United States supported it motion by explaining, among other points, that (1) the complaint does not allege any false claim or false statement by a defendant, (2) the after an investigation the United States determined the allegations lacked merit, and (3) dismissal is in the public interest. (U.S. Supplemental Memorandum in Support of Its Motion to Dismiss Relator's Complaint, DKT 29-1, pp 6-7). From this Relator surmises that the Government must be engaging in a cover-up to justify the Court taking the extraordinary—even unprecedented—step of removing the United States as a party to an action brought on its behalf, and the Department of Justice in its representational role. Under the result advocated by Relator, impinging on constitutional and statutory authority granted the Attorney General to prosecute FCA *qui tam* actions, he then could exercise control over the litigation without the limitations set forth in the FCA, or any limitations whatsoever.

Relator's argument to disqualify the Attorney General based on a purported conflict ignores the fact that the Attorney General has plenary power and exclusive authority to represent the United States in all litigation to which the United States or one of its agencies is a party. This authority is derived from Article II of the Constitution, which confers on the Executive branch the authority to see that the laws are faithfully executed. The authority is delegated further to the Attorney General specifically by 28 U.S.C. § 516, which provides that "[e]xcept as otherwise

authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General." Federal statute provides further that "[e]xcept as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party, and shall direct all United States attorneys, assistant United States attorneys, and special attorneys appointed under section 543 of this title in the discharge of their respective duties." Id. § 519; *see also* The Attorney General's Role as Chief Litigator for the United States, 6 Op. Off. Legal Counsel 47, 55 (1982) ("[B]ecause of his unique responsibilities in representing government-wide interests as well as those of particular 'client' agencies, the final judgment concerning the best interests of the United States [in litigation] must be reserved to the Attorney General.") (https://www.justice.gov/file/149786/dl, last accessed on October 9, 2024). Relator can point to no law overriding the Attorney General's plenary authority to conduct litigation in which the United States is a party or is interested. To the contrary, the FCA authorizes the Attorney General to seek dismissal of a relator's action, 31 U.S.C. § 3730(c)(2)(A), or otherwise limit a relator's participation in an action, 31 U.S.C. § 3730(c)(2)(C), without offering a corresponding right to a relator.

In *Neville v. Lipnic*, the Fifth Circuit rejected the argument that the Department of Justice or the Attorney General cannot simultaneously represent multiple federal agencies with differing positions or interests in a case being litigated without there being a conflict of interest, ruling that an Attorney's Rules of Professional Conduct governing conflicts do not override the Attorney General's "plenary power." 778 Fed. Appx. 280, 288 (5th Cir. 2019). As another court

explained:

> It is well established that the Attorney General has exclusive authority to represent the interests of the United States in litigation, including federal agencies. *See* 28 U.S.C. §§ 516, 519 (2006); *see also The Gray Jacket,* 72 U.S. 370, 371 (1866). *The Attorney General's client is the United States as a whole, and when the federal government or any of its agencies is sued, disagreements among federal agencies in regard to positions taken in litigation are the Attorney General's to resolve*. *See* The Attorney General's Role as Chief Litigator for the United States, 6 Op. Off. Legal Counsel 47, 54-55 (1982) ("[B]ecause of his unique responsibilities in representing government-wide interests as well as those of particular 'client' agencies, the final judgment concerning the best interests of the United States [in litigation] must be reserved to the Attorney General.")

*Neville v. Yang,* No. 15-CV-1032-KBJ, 2016 WL 11050573, at *2 (D.D.C. Mar. 18, 2016) (emphasis added).

The Relator's allegation that a "conflict of interest" exists, and that the Department of Justice is incapable of honestly and objectively investigating allegations that appear to challenge longstanding policies and practices of the Defense Logistics Agency, or representing the interests of the United States in litigation, stands in stark contrast to the number of instances where the Department of Justice has prosecuted U.S. Government actors, including individuals within the Department of Justice itself. *See, e.g.*, "*Former Deputy U.S. Marshal Sentenced for Cyberstalking, Perjury, and Obstruction*" (June 30, 2023); "*Deputy U.S. Marshal Pleads Guilty to Obtaining Cell Phone Location Information Unlawfully*" (June 30, 2023); "*Former Air Force Contractor Pleads Guilty to Bribery Scheme*" (November 1, 2023); "*U.S. Postal Inspector Charged with Mail Theft, Obstruction of Justice, and Money Laundering*" (December 8, 2023); "*Former Federal Employees Sentenced for Conspiracy to Steal Proprietary U.S. Government Software and Databases*" (January 26, 2024); "*Assistant U.S. Attorney Pleads Guilty to Conflict of Interest Violation*" (March 29, 2023); "*Former U.S. assistant attorney pleads guilty to stealing*

*thousands from feds by falsifying time cards*" (November 21, 2019) (copies attached). In the specific context of *qui tam* actions dismissed pursuant to section 3730(c)(2)(A), courts have allowed the United States to exercise its dismissal prerogative when the relator's allegations squarely challenge agency policies or conduct. *See, e.g., United States ex rel. Jackson v. Ventavia Research Group, LLC, et al.*, __ F.Supp.3d. __, 2024 WL 3812294 at *8 (E.D. Tex. Aug. 9, 2024) (granting Government's motion to dismiss and rejecting "Relator's conjecture" that dismissal reflected "lack of political will" and concluding that "Relator's differing perspective" challenging the U.S. Food and Drug Administration's position on COVID-19 vaccine data was not enough to prevent dismissal).

II

ANY PURPORTED "CONFLICT" IS NOT AN "EXTRAORDINARY CIRCUMSTANCE."

"The appropriate standard [in assessing a Section 3730(c)(2)(A) motion] derives from Federal Rule 41(a), which governs voluntary dismissals in ordinary civil litigation." *Polansky,* 599 U.S. at 435 (citing *Polansky v. Executive Health Resources, Inc.,* 17 F.4th at 389-91). But as the Supreme Court stated,[1] and the Fourth Circuit cautioned,[2] the standard for dismissal under Rule 41(a)(1) is different from the standard under Rule 41(a)(2). The difference between the

---

[1] "Under [Rule 41] the standard varies with the case's procedural posture. If the defendant has not yet served an answer or summary judgment motion, the plaintiff need only file a notice of dismissal. *But once that threshold has been crossed [and an answer or motion for summary judgment has been filed]—as in this case—dismissal requires a 'court order, on terms that the court considers proper*." *Polansky*, 599 U.S. at 435 (citing Rule 41(a)(2), Fed. R. Civ. P.) (emphasis added).

[2] "Keep in mind that *Polansky* dealt with Rule 41(a)(2), which is a dismissal that happens post-answer and requires a court order." *Credit Suisse*, No. 22-1054, (slip op.), pp. 9-10.

two subsections of Rule 41 – and importantly, the differing standards governing voluntary dismissal – is the time at which the dismissal is sought; namely, whether the defendant (here, Boeing, *et al*.) have filed an answer or moved for summary judgment.

And the differences are palpable. If the defendant has answered or moved for summary judgment:

> *Rule 41(a)(2)* vests a "broad grant of discretion" in district courts to dismiss "'on terms that the court considers proper,'" . . . *and we do not foreclose the court's ability to exercise that discretion to mitigate against* ***extraordinary prejudice*** *in an* ***exceptional case***. . . . While the FCA imposes significant restrictions on such terms, *e.g.,* 31 U.S.C. § 3730(f) (disallowing the recovery of fees and costs against the Government) . . . we do not rule out the possibility that others remain available.

*Polansky,* 17 F.4th at 390, n. 18 (cited approvingly by *Polansky*, 599 U.S. at 436) (emphasis added). On the other hand, ***as here***, "before an answer is filed . . . Rule 41[(a)(1)(A)] *entitles the movant to a dismissal*; the district court has no adjudicatory role," but "a hearing, whether pre- or post-answer, might inquire into allegations that a dismissal violates the relator's rights to due process or equal protection." *Polansky*, 599 U.S. at 436, n. 4.; *see also Polansky*, 17 F.4th at 390 (noting that where "the defendant has yet to answer or move for summary judgment, *the Government is entitled to dismissal*, Fed. R. Civ. P. 41(a)(1)(A), albeit with an opportunity for the relator to be heard, . . . subject only to the bedrock constitutional bar on arbitrary Government action." (emphasis added); *see Credit Suisse*, (slip op.) at 5, n.2, 8 ("if the government moves to dismiss before an answer or motion for summary judgment has been served, then Rule 41(a)(1) applies, which allows swift dismissal 'without a court order'" and "[where] dismissal happen[s] at the pre-answer, pre-summary judgment stage, during which Rule 41(a)(1) applies . . . no court order [is] required"). As succinctly stated by *Credit Suisse*, "when

the government seeks dismissal before an answer is filed, '*Rule 41 entitles the movant to a dismissal; the district court has no adjudicatory role*." *Credit Suisse*, (slip op.) at 9 (emphasis added) (quoting *Polansky,* 599 U.S. at 436 n.4). And *that* is exactly the procedural posture of the instant FCA action – the Government has sought dismissal before any defendant has filed an answer or moved for summary judgment, where its decision to dismiss carries the highest deference.

With the foregoing in mind, we turn to the question posed by the Court in its Order entered September 10, 2024 (Dkt. 52): whether Relator's "asserted conflict may . . . constitute an extraordinary circumstance within the meaning of *United States ex rel. Polansky v. Executive Health Resources, Inc.,* 599 U.S. 419 (2022)," and the "significance of the decision in *United States Ex Rel. John Doe v. Credit Suisse AG* to the issues presented in ECF Nos. 37 and 51 and the Complaint?"

As the Fourth Circuit recently held in *Credit Suisse*, "in considering a *Rule 41(a)(1) motion to dismiss*, the government is entitled to even greater deference" than the "extraordinary circumstances" rubric employed in *Polansky* "*since no court order is required*." Put differently, the concept of "extraordinary circumstances," or "extraordinary prejudice in an exceptional case," applies to a different context – where the United States' dismissal of a *qui tam* action over the objection of the relator after the defendant has filed an answer or motion for summary judgment. *See Polansky,* 17 F.4th at 390, n. 18; *Polansky*, 599 U.S. at 438 ("Absent some *extraordinary circumstance*, [the Government's showing of "good grounds for thinking that this suit would not . . . vindicate the Government's interests" in a Rule 41(a)(2) dismissal] is all that is needed for the Government to prevail on a (2)(A) motion to dismiss") (emphasis added);.

But even assuming that the higher standard applies, in every instance where the courts speak of an "extraordinary circumstance" or "extraordinary prejudice" or an "exceptional case," the focus is on the prejudice to the *relator*, and then only prejudice arising to the level of constitutional proportions, *i.e.,* a deprivation of due process or denial of equal protection. *See, e.g., Polansky,* 599 U.S. at 437 n.4 (In a Rule 41(a)(1)(A) context, "Rule 41 entitles the movant to a dismissal; the district court has no adjudicatory role. . . . [But] Rule 41's standards 'rest atop the foundation of bedrock constitutional constraints on Government action.' . . . So a hearing, whether pre- or post-answer, might inquire into allegations that a dismissal 'violate[s] *the relator's rights* to due process or equal protection.'") (emphasis added); *Polansky*, 17 F.4th at 390, and n.16 ("If the defendant has yet to answer or move for summary judgment, the Government is entitled to dismissal . . . albeit with an opportunity for the relator to be heard. . . . Rule 41(a)'s procedures rest atop the foundation of bedrock constitutional constraints on Government action, such that even a preanswer dismissal *could not violate the relator's rights to due process or equal protection*. . . . So in 'exceptional cases these constitutional limits could supply the grist for the hearing under § 3730(c)(2)(A)'") (emphasis added) (internal citations omitted); *Credit Suisse*, slip op. at 9 ("Because [Relator] has not raised any colorable claim that his due process or equal protection rights have been violated, the district court's dismissal was proper").

Relator has not and cannot make a claim that the Government's dismissal of this FCA action would cause anything even approaching a deprivation of *his* Constitutional rights. *See* Dkt. 42 at 2-6. And that ends the inquiry – under *Polansky* and *Credit Suisse*, there is nothing further for this Court to resolve.

Neither the Third Circuit's opinion in *Polansky*, the Supreme Court's opinion in *Polansky*, nor the Fourth Circuit's opinion in *Credit Suisse* support the Relator's unsupported contention that "[t]he issue of a conflict of interest, as presented in the motion to disqualify the Government from prosecuting this case, rises to the level of an 'extraordinary circumstance' referenced in [*Credit Suisse*] and *Polansky,* 599 U.S. at 438, and constitutes an exception to the 'substantial deference' the Government typically enjoys when opting to dismiss a *qui tam* action." Dkt. 53 at 2. Consequently, there is no support under a "conflict of interest" theory for finding an "extraordinary circumstance" sufficient to remove the Department of Justice from the case. Relator's argument is a non-sequitur in that he relies on *Polansky*, a decision that gives deference to the United States in a *qui tam*, equal to that of any plaintiff under Rule 41, to conclude not only that dismissal under Rule 41 should be denied, but also, that the counsel for the United States should be removed from the case. While the Relator asserts generally that *Credit Suisse* "reinforces" the Court's authority to disqualify the United States and should "embolden" the Court to do so (*see, e.g.,* Dkt. 53, at 2, 5), he cites to nothing in the opinion supporting his conclusion. Of course, there *is nothing* in the opinion to support disqualifying the Attorney General from representing the Government in this case, nor "removing" the United States as a party. To do so would, itself, be "exceptional" or "extraordinary." As set forth below, it also would be unconstitutional.

III

REMOVING THE UNITED STATES AS A PARTY OR DISQUALIFYING THE ATTORNEY GENERAL FROM REPRESENTING THE UNITED STATES WOULD IMPINGE ON THE EXECUTIVE'S CONSTITUTIONAL AUTHORITY TO CONTROL LIITIGATION BROUGHT IN THE NAME OF THE UNITED STATES.

Courts of appeals have consistently affirmed the constitutionality of the FCA. Among the reasons for finding the *qui tam* provisions constitutional is the very feature that the Relator here wishes to eliminate from the statute—the Attorney General's substantial and ultimate control over FCA litigation.

The Ninth Circuit, in *United States ex rel. Kelly v. Boeing Co.,* 9 F.3d 743, 755 (9th Cir. 1993), upheld the constitutionality of the FCA because the Executive Branch exercised at least as much control over FCA relators as it does independent counsels (whose constitutionality was upheld in *Morrison v. Olson*, 487 U.S. 654 (1988)). The court in *Kelly* explained:

> Under the FCA, the Executive Branch can control a *qui tam* relator's exercise of prosecutorial powers in several ways. The government can intervene in a case and then take primary responsibility for prosecuting the action; it can seek judicial limitation of the relator's participation; it can move for dismissal of a case which it believes has no merit, after notice to the relator and opportunity for a hearing; it can seek a judicial stay of the relator's discovery regardless of whether it intervenes; and it remains free to seek any alternate remedies available, including through any administrative proceeding.
>
> * * * *
>
> [While] the *qui tam* provisions of the FCA to some degree diminish Executive Branch control over the initiation and prosecution of a defined class of civil litigation. Nonetheless, we find that the Executive Branch exercises at least an equivalent amount of control over *qui tam* relators as it does over independent counsels. *Thus, the FCA gives the Attorney General sufficient means of controlling or supervising relators to satisfy separation of powers concerns*.

*Kelly*, 9 F.3d 743, 750, 753, 754–55 (9th Cir. 1993) (emphasis added).

Other courts have held similarly. The Sixth Circuit held that the *qui tam* provisions of the FCA "do not contradict the constitutional principle of separation of powers [because] they have been crafted with particular care to maintain the primacy of the Executive Branch in prosecuting

false-claims actions." *United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.,* 41 F.3d 1032, 1041 (6th Cir. 1994). The court went on to list the many controls exercised by the Attorney General in FCA *qui tam* actions and concluded that "the Executive Branch retains 'sufficient control' over the relator's conduct to 'ensure that the President is able to perform his constitutionally assigned duty." *Id.* And the Second Circuit held that the *qui tam* provisions of the FCA "do not usurp the executive litigating function because the statute gives the executive branch substantial control over the litigation." *United States ex rel. Kreindler v. United Techs.,* 985 F.2d 1148, 1155 (2nd Cir.1993).

Thus, if this Court were to "disqualify" the Attorney General altogether or "remove" the United States as a party from this case, and turn sole litigative responsibility for claims of the United States over to the Relator, it would erode the carefully calibrated statutory provisions that "maintain the primacy of the Executive Branch in prosecuting false-claims actions," *United States ex rel. Taxpayers Against Fraud,* 41 F.3d and 1041, and severely impinge on the government's traditional, constitutionally grounded authority to control litigation brought in its name.

/ / / /

/ / / /

/ / / /

CONCLUSION

For the foregoing reasons, Relator's Motion to Disqualify the United States should be denied.

DATED: October 11, 2024.

Respectfully submitted,

JESSICA D. ABER
United States Attorney

By: /s/

ROBERT P. MCINTOSH
VSB No. 66113
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Telephone: (804) 819-7404
Facsimile: (804) 771-2316
Email: Robert.McIntosh@usdoj.gov
*Attorneys for the United States*

CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of October 2024, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Elliott M. Harding, Esquire
Harding Counsel, PLLC
1260 Clifden Greene
Charlottesville, Virginia 22901
Email: elliott@hardingcounsel.com

And I hereby certify that I will mail the document by United States mail, first-class postage prepaid, to the non-filing user addressed as follows:

/s/

Robert P. McIntosh
Virginia Bar Number 66113
Attorney for the United States of America
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Telephone: (804) 819-7404
Facsimile: (804) 771-2316
Email: Robert.McIntosh@usdoj.gov